IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMC CORPORATION,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   C.A. No. 16-176 (RGA)
                                   )
PURE STORAGE, INC.,                )
                                   )
            Defendant.             )

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STAY CASE PENDING RESOLUTION OF
POST-TRIAL AND APPELLATE PROCEEDINGS IN RELATED CASE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
*Attorneys for Plaintiffs EMC Corporation,
EMC International Company, and EMC
Information Systems International*

OF COUNSEL:

Josh A. Krevitt
Paul E. Torchia
Steven M. Kalogeras
Katherine Q. Dominguez
Laura F. Corbin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2490

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Jordan H. Bekier
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA  01748

April 28, 2016

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ......................................................................................... iv

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 2

III.   SUMMARY OF THE ARGUMENT ............................................................................ 3

IV.    FACTUAL BACKGROUND .................................................................................... 4

V.     ARGUMENT ....................................................................................................... 6

       A.     Pure's Motion Is Unprecedented and Unsupported by Pure's Own Cases ............ 6

       B.     EMC Would Suffer Undue Prejudice from a Stay of This Action ....................... 9

              1.     EMC and Pure Are Direct Competitors ................................................... 10

              2.     A Stay Would Prevent EMC from Receiving Immediate Injunctive
                     Relief and the Expedited Resolution of This Case ................................... 11

              3.     Pure Has Not Come Close to Showing a Clear Case of Hardship or
                     Inequity Should the Court Deny Its Motion to Stay ................................ 14

       C.     A Stay Is Unlikely to Simplify the Issues Presented in This Case ..................... 14

       D.     The Stage of Litigation Weighs Against a Stay ................................................. 16

       E.     The Timing of This Suit Is Proper ................................................................... 17

VI.    CONCLUSION ................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ASUSTek Comp. Inc. v. Ricoh Co.*,
    No. C0701942-MHP, 2007 WL 4190689 (N.D. Cal. Nov. 21, 2007)......................................8

*Cooper Notification, Inc. v. Twitter, Inc.*,
    No. CIV. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ....................10, 13, 14, 16

*Ever Win Int'l Corp. v. Radioshack Corp.*,
    902 F.Supp.2d 503 (D. Del. 2012).........................................................................................8

*Fleming v. Escort Inc.*,
    774 F.3d 1371 (Fed. Cir. 2014)...........................................................................................15

*FMC Corp. v. Summit Agro USA, LLC*,
    No. CV 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014) ...............................10, 11, 12

*Helios Software, LLC v. Spectorsoft Corp.*,
    No. CV 15-20-LPS-CJB, 2015 WL 1387583 (D. Del. Mar. 25, 2015) ....................................9

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    No. CA 12-054-GMS-MPT, 2013 WL 663535 (D. Del. Feb. 25, 2013)............................8, 10

*ImageVision.Net v. Internet Payment Exch., Inc.*,
    No. CIV. 12-054-GMS, 2012 WL 5599338 (D. Del. Nov. 15, 2012) .................................7, 14

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008)...........................................................................................15

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)............................................................................................15

*MEI, Inc. v. JCM Am. Corp.*,
    No. CIV. 09-351 RBK/JS, 2009 WL 3335866 (D. N.J. Oct. 15, 2009) ...................................9

*Proctor & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008)..........................................................................................1, 11

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    No. C03-02289 MJJ, 2006 WL 3708069 (N.D. Cal. Dec. 14, 2006) ......................................7

*SenoRx, Inc. v. Hologic, Inc.*,
    No.12-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) ..................................3, 6, 7, 10, 14

*SoftView LLC v. Apple Inc.*,
   No. CIV. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ........................................16

*St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Hldgs. Corp.*,
   No. CIV. 08-373-JJF-LPS, 2009 WL 192457 (D. Del. Jan. 27, 2009).....................7, 8, 13, 14

*St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility LLC*,
   No. CIV. 11-1305-LPS, 2012 WL 4321743 (D. Del. Sept. 20, 2012).......................................9

*St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*,
   No. CIV. 04-1436-JJF-LPS, 2010 WL 1213367 (D. Del. Mar. 28, 2010) ................................8

*Tivo Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011)................................................................................................13

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008)..............................................................................................15

## TABLE OF ABBREVIATIONS

| Abbreviation | Document(s) |
|---|---|
| '015 patent | U.S. Patent No. 7,434,015 (Issued October 7, 2008) (2013 Action, PTX 3) |
| 2013 Action | *EMC Corporation, et al. v. Pure Storage Inc.*, C.A. No. 13-1985-RGA (D. Del.) |
| 2013 Complaint | Complaint for Injunctive Relief and Damages (November 26, 2013) (2013 Action, D.I. 1) |
| 3/5/13 Pure Blog | Pure Storage blog post by Scott Dietzen dated March 5, 2013 titled "EMC XtremIO: On Your Mark, Get Set, . . . Beta" (2013 Action, PTX 238) |
| 6/23/15 Letter to M. Werdegar | June 23, 2015 letter sent by Matthew Poppe to Matthew Werdegar (D.I. 18, Ex. 1) |
| 7/13 Pure PPT | Pure Storage investor update presentation dated July 2013 titled "Flash for All" (2013 Action, PTX 278). |
| 7/2/15 Letter to M. Poppe | July 2, 2015 letter sent by Matthew Werdegar to Matthew Poppe (D.I. 10, Ex. G) |
| 7/29/15 Letter to M. Werdegar | July 29, 2015 letter sent by Matthew Poppe to Matthew Werdegar (D.I. 18, Ex. 2) |
| Amended Answer | Pure Storage's Amended Answer to Complaint for Injunctive Relief and Damages for Patent Infringement (April 21, 2016) (D.I. 14) |
| Answer | Pure Storage's Answer to Complaint for Injunctive Relief and Damages for Patent Infringement (April 11, 2016) (D.I. 6) |
| Complaint | Complaint for Injunctive Relief and Damages for Patent Infringement (March 21, 2016) (D.I. 1) |
| D.I. | Docket Index |
| EMC | Plaintiff EMC Corporation |
| FlashArray//m Press Release | Pure Storage press release titled "Pure Storage Unveils FlashArray//m, Pure1 and Evergreen Storage, Introducing a Simpler and More Efficient Model for Storage Ownership" (June 1, 2015) (D.I. 18, Ex. 9) |

| Abbreviation | Document(s) |
|---|---|
| Gartner Rpt. | Gartner market research report dated June 23, 2015 titled "Magic Quadrant for Solid-State Arrays" (2013 Action, PTX 222). |
| Goldstein Decl. | Declaration of Joshua Goldstein in Support of EMC's Motion for a Preliminary Injunction (April 22, 2016) (D.I. 17) |
| IDC Rpt. | IDC market research report titled "Worldwide All-Flash Array and Hybrid Flash Array 2-14-2018 Forecast and 1H14 Vendor Shares" (November 2014) (2013 Action, PTX 200) |
| JMOL Mot. | Defendant Pure Storage, Inc.'s Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (April 12, 2016) (2013 Action, D.I. 484) |
| Mem. Op. re MSJ | Memorandum Opinion regarding EMC's and Pure Storage's Motions for Summary Judgment (February 11, 2016) (2013 Action, D.I. 381) |
| MSJ Order | Order Granting in Part and Denying in Part EMC's and Pure Storage's Motions for Summary Judgment (February 11, 2016) (2013 Action, D.I. 388). |
| Perm. Inj. Mot. | Plaintiff EMC's Motion for a Permanent Injunction (April 14, 2016) (2013 Action, D.I. 491) |
| Prelim. Inj. Br. | Plaintiff EMC's Opening Brief in Support of Its Motion for a Preliminary Injunction (April 22, 2016) (D.I. 16) |
| Prelim. Inj. Mot. | Plaintiff EMC's Motion for a Preliminary Injunction (April 22, 2016) (D.I. 15) |
| Pure | Defendant Pure Storage, Inc. |
| Pure 2016 10-K | Pure Storage, Inc. Form 10-K for period ending January 31, 2016 (Filed March 25, 2016) (D.I 18, Ex. 7) |
| Pure Br. | Opening Brief in Support of Defendant Pure Storage's Motion to Stay Case Pending Resolution of Post-Trial and Appellate Proceedings in Related Case (April 11, 2016) (D.I. 9) |
| Pure Litigation Update 1 | Pure Storage blog post by Joe Fitzgerald titled "Litigation Update" (March 15, 2016) (D.I. 18, Ex. 6) |
| Pure Litigation Update 2 | Pure Storage blog post by Joe Fitzgerald titled "Patent Litigation: The Straight Truth" (April 14, 2016) (D.I. 18, Ex. 8) |

| Abbreviation | Document(s) |
|---|---|
| Scheduling Order | Case Management and Scheduling Order (February 21, 2014) (2013 Action, D.I. 16) |
| TechValidate Rpt. | Customer Baseline Survey results regarding EMC's XtremIO product from TechValidate.com (2013 Action, PTX 276). |
| Verdict | Jury Verdict (Rendered March 15, 2016) (2013 Action, D.I. 453) |

## I.      INTRODUCTION

EMC requires the Court's urgent assistance in this case.  EMC recently filed a motion for preliminary injunction to prevent Pure from continuing to sell its infringing products.  EMC's motion was necessary because, although EMC has sought a permanent injunction in the copending litigation between EMC and Pure, Pure has publicly stated that it will continue to sell new infringing products no matter what the outcome of that litigation.  Specifically, Pure has contended that both its current FlashArray//m product as well as a forthcoming redesign are outside the scope of any permanent injunction that may issue in the other case, even though they both clearly infringe.  Pure's promise to continue its infringing actions unabated underscores the irreparable harm EMC will suffer without prompt relief from the Court.

Pure, with an astonishing blindness to the seriousness of its actions and EMC's critical need of a timely remedy, has asked that this case be stayed.  A stay is uniquely inappropriate in a case like this one, where preliminary relief is not only warranted, but essential to prevent a repeat infringer from continuing to use the patented technology of its primary competitor.  Indeed, the Federal Circuit has held that when both a preliminary injunction motion and a motion to stay are pending, the preliminary injunction motion must be decided first and on the merits.  *See Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 843, 849 (Fed. Cir. 2008).[1]  But even apart from the fact that EMC is seeking preliminary relief, this case should still move forward. In fact, if Pure's infringement is not enjoined, it is even more critical that EMC obtain a prompt public ruling that Pure's new redesign infringes.  Although that finding would not in itself prevent EMC from being irreparably harmed, an infringement ruling could at least help dissuade

---

[1]  Here, EMC informed Pure of its desire to seek preliminary relief before Pure filed its motion to stay.

potential EMC customers from buying Pure's product at EMC's expense, and help ensure that EMC obtains enhanced damages for the entire period of infringement.

Consistent with these self-evident principles, the law governing motions to stay, including Pure's own cited cases, uniformly favors EMC. Pure has not cited a single case where an adjudicated infringer successfully invoked its own post-trial motions and appeal, filed in a first case, as a basis to obtain a stay of a second action for ongoing infringement of the same patent. Rather, Pure's cases primarily involve reexaminations or similar actions before the PTO, where the examiners found that there is a significant question of patentability, and the courts noted that changes to the claims that would impact the cases were likely. Here, Pure's chances of prevailing on appeal are uncertain at best, especially in light of the fact that Pure has nothing to raise beyond validity issues where Pure bore a burden of proof by clear and convincing evidence, and claim construction issues where the Court properly declined Pure's invitation to graft limitations into the claims from the specification.

Finally, Pure devotes page after page of its brief to baseless assertions that EMC delayed in bringing this case. There was no delay. The models of Pure's FlashArray product accused in this case were not released until after the close of discovery in the 2013 Action. It would have made no sense for EMC to file a new lawsuit when that case was so close to resolution, particularly since the outcome of the 2013 Action would dictate the outcome of the new case. As soon as EMC prevailed in the 2013 Action, and as soon as EMC learned that Pure would attempt to evade the permanent injunction in the 2013 Action, EMC acted. Pure's motion to stay, which ignores facts and is unsupported by Pure's own cited cases, should be denied.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

In 2013, EMC sued Pure, alleging that Pure's FlashArray 300 and 400 products infringed the '015 patent. 2013 Complaint (2013 Action, D.I. 1). The FlashArray 300 and 400 products

were found to infringe, and the '015 patent was found valid.  Mem. Op. re MSJ (2013 Action, D.I. 381); MSJ Order (2013 Action, D.I. 388); Verdict (2013 Action, D.I. 453).  Pure has moved for judgment as a matter of law in the 2013 Action, seeking to override the jury's verdict on the validity and conception date of the '015 patent. JMOL Mot. (2013 Action, D.I. 484).  EMC has moved for a permanent injunction to prevent Pure from continuing to manufacture and sell its infringing products.  Perm. Inj. Mot. (2013 Action, D.I. 491).

EMC filed this new action on March 21, 2016, specifically accusing Pure's FlashArray//m product of infringing the '015 patent.  Complaint (D.I. 1).  Pure filed its Answer (D.I. 6) to EMC's Complaint on April 11, 2016 and filed the instant motion to stay.  Pure has since filed an Amended Answer (D.I. 14), and EMC has moved for a preliminary injunction.  Prelim. Inj. Mot. (D.I. 15).

## III.    SUMMARY OF THE ARGUMENT

1.    Courts typically consider three factors in deciding motions to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage."  *SenoRx, Inc. v. Hologic, Inc.*, No.12-173-LPS, 2013 WL 144255, at *2 (D. Del. Jan. 11, 2013).

2.    EMC will suffer undue prejudice from a stay, because EMC and Pure are direct competitors, and EMC suffers lost sales, loss of market share, price erosion, loss of goodwill and other incalculable damages from Pure's infringement.  EMC requires preliminary injunctive relief, or, at a minimum, an expedited adjudication of infringement of FlashArray//m, in order to deter Pure from continuing to infringe the '015 patent.  In contrast, Pure has not identified harm or inequity that it will suffer, should the stay be denied.

3.      A stay is unlikely to simplify the issues for trial, because the outcomes of Pure's motion for judgment as a matter of law and any future appeal Pure may take in the 2013 Action are unlikely to be in Pure's favor.  A result in EMC's favor would not alter or simplify this case.

4.      The status of the litigation does not weigh in favor of a stay.  After years of litigation in this Court in the 2013 Action, many relevant issues have already been determined, and there is little new work unique to this case that would need to be redone in the unlikely event that Pure prevailed on appeal of either validity or claim construction. Accordingly, staying this action will not promote the interest of judicial economy.

5.      EMC did not delay in accusing FlashArray//m as Pure suggests.  FlashArray//m was released after the close of fact discovery, and Pure refused to respond to EMC's targeted discovery requests on that product.   Accordingly, EMC reserved its right to accuse FlashArray//m in a later suit, and did so immediately upon learning that Pure would implement an infringing "alternative" version of deduplication in that product.

## IV.    FACTUAL BACKGROUND

On November 26, 2013, EMC sued Pure, alleging that Pure's FlashArray Series 300 and 400 products infringed EMC's '015 patent, which covers critical deduplication technology used in electronic data storage.   Complaint (2013 Action, D.I. 1).   The Court ruled on summary judgment that the inline deduplication technology of the FlashArray 300 and 400 infringes claims 1, 7, and 16 of EMC's '015 patent.  MSJ Order (2013 Action, D.I. 388).  Pure later stipulated to infringement of claims 2 and 5, and to inducement of all five asserted claims. Answer (D.I. 6) ¶ 12.

On June 1, 2015, during the course of the 2013 Action, Pure released what would become its new flagship product: the FlashArray//m.  FlashArray//m Press Release (D.I. 18, Ex. 9) at 1. At this time, discovery in the 2013 Action had closed.  Scheduling Order (2013 Action, D.I. 16)

at 3.  After FlashArray//m's release, EMC promptly wrote to Pure requesting targeted discovery regarding FlashArray//m.  6/23/15 Letter to M. Werdegar (D.I. 18, Ex. 1).  Pure refused, and asserted that it was too late for EMC to add FlashArray//m in the 2013 Action.  7/2/15 Letter to M. Poppe (D.I. 10, Ex. G).  EMC responded that if FlashArray//m's inline deduplication feature and the inline deduplication feature then accused in the 2013 Action were not materially different, FlashArray//m was an infringing product that would be encompassed within any injunction issued by the Court and/or would be the subject of a new litigation.  7/29/15 Letter to M. Werdegar (D.I. 18, Ex. 2).  Thus, the 2013 Action proceeded without FlashArray//m, and the damages award in that case did not compensate EMC for infringing sales of FlashArray//m.

FlashArray//m has replaced the FlashArray 300 and 400.  Prelim. Inj. Br. (D.I. 16) at 6.  FlashArray//m incorporates the same infringing inline deduplication feature as the FlashArray 300 and 400.  That feature is part of the Purity Operating Environment, which "runs across *all* FlashArray generations."  Pure 2016 10-K (D.I 18, Ex. 7) at 7 (emphasis added); *see also* Prelim. Inj. Br. (D.I. 16) at 6-7.  Shortly after the jury returned its verdict in the 2013 Action, Pure's general counsel released a statement on Pure's blog that Pure did not expect to pay ongoing royalties to EMC.  Pure Litigation Update 1 (D.I. 18, Ex. 6).  In a subsequent blog post, Pure's general counsel stated that Pure would implement a redesign of the infringing inline deduplication feature in FlashArray//m.  Pure Litigation Update 2 (D.I. 18, Ex. 8) at 2.  EMC's expert explained at trial that this very redesign still infringes, and the jury rejected it.  Prelim. Inj. Br. (D.I. 16) at 8.

EMC filed this action shortly after the conclusion of the 2013 Action.  When it became clear that Pure would take the position that FlashArray//m would not be covered by any permanent injunction issued in the 2013 Action, EMC moved for a preliminary injunction in this

case. EMC conferred with Pure and asked whether Pure would agree to remove inline deduplication from FlashArray//m in the event this Court grants EMC's motion for a permanent injunction in the 2013 Action, rather than implement this infringing re-design.  EMC further offered to agree to Pure's motion to stay, provided that Pure agreed to EMC's motion for a preliminary injunction.  Pure declined, and EMC stated that it would oppose Pure's motion.

## V.     ARGUMENT

Pure, an adjudicated infringer and EMC's closest competitor, seeks to use its own post-trial motion and appeal to delay EMC from obtaining a ruling that Pure's "redesign" of inline deduplication contained in its FlashArray//m product infringes.  The longer Pure is able to delay an adjudication of this issue on the merits, the more time Pure is able to compete against EMC using EMC's own patented technology, and the more sales, profits, and goodwill are taken from EMC and given to Pure.  But the law of this district does not support the grant of a stay in this circumstance, when the parties are direct competitors, precisely because of the great risk of undue harm to the plaintiff.  *See SenoRx*, 2013 WL 144255, at *7.  Not only would a stay unduly prejudice EMC, but Pure's requested stay would not advance the interests of efficiency or economy.  Because all relevant factors weigh in favor of EMC's position, the Court should deny Pure's motion to stay, and allow this case to proceed to resolution.

### A.     Pure's Motion Is Unprecedented and Unsupported by Pure's Own Cases

The stay that Pure seeks in this case, and under these facts, would be unprecedented. Notably, Pure has not cited a single case where an adjudicated infringer successfully invoked its own post-trial motions or appeals in a first case as a basis to stay a second case for continued infringement of the same patent.  EMC conducted its own extensive search of the caselaw and has not found any case, from any court, where a stay was ever granted under these facts.

In determining whether to grant a motion to stay, courts typically consider three factors: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation . . .; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *SenoRx*, 2013 WL 144255, at *2. The analysis of "undue prejudice" involves a balancing of the interests of the two parties. *ImageVision.Net v. Internet Payment Exch., Inc.*, No. CIV. 12-054-GMS, 2012 WL 5599338, at *3 (D. Del. Nov. 15, 2012). Generally, the movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *See St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Hldgs. Corp.*, No. CIV. 08-373-JJF-LPS, 2009 WL 192457, at * 2 (D. Del. Jan. 27, 2009) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see also ImageVision.Net*, 2012 WL 5599338, at *3. Courts are reluctant to stay proceedings in which the parties are direct competitors, as "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *See, e.g.*, *SenoRx*, 2013 WL 144255, at *7.

Courts sometimes grant stays in those cases where parallel proceedings are highly likely to impact the outcome of the case sought to be stayed. Not surprisingly, Pure relies heavily on cases involving motions to stay pending parallel proceedings before the Patent and Trademark Office ("PTO"). But these motions are granted because PTO proceedings very often result in modification or cancelation of claims, or at least arguments which may impact claim interpretation. *See, e.g.*, *Ricoh Co., Ltd. v. Aeroflex Inc.*, No. C03-02289 MJJ, 2006 WL 3708069, at *3 (N.D. Cal. Dec. 14, 2006) (granting motion to stay during PTO reexamination,

noting "[c]ourts routinely consider the expertise of the PTO, under which claim validity will be rigorously reevaluated, as an important factor in determining whether to stay its proceedings"); *see also Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F.Supp.2d 503, 506 (D. Del. 2012) (same, noting the high degree of likelihood that PTO reexamination would cancel or modify the claims). Courts often note in these cases that the PTO, by instituting a proceeding (which typically is not granted as a matter of right), has made a preliminary finding that there is a significant question of validity to address. *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. CA 12-054-GMS-MPT, 2013 WL 663535, at *4 (D. Del. Feb. 25, 2013) (observing that simplification weighed in favor of granting a stay during PTO reexamination because "reexamination was granted under the new heightened standard of the AIA, which means defendant is reasonably likely to prevail on invalidity," but ultimately denying stay because the parties were direct competitors), *report and recommendation adopted*, 2013 WL 1748554 (D. Del. Apr. 22, 2013).

Motions for a stay pending an appeal of right in a related district court case, on the other hand, are entirely distinguishable from motions to stay pending PTO proceedings, and are disfavored. Courts often deny motions to stay pending appeals in related district court cases because the outcome of appeal to the Federal Circuit, unlike a PTO proceeding, is "speculative" at best. *See Fujifilm*, 2009 WL 192457, at *2; *see also St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*, No. CIV. 04-1436-JJF-LPS, 2010 WL 1213367, at *2-3 (D. Del. Mar. 28, 2010) (denying motion to stay during appeal of related action when "both the timing and outcome of the . . . appeal are speculative" and, noting that, if the Federal Circuit affirmed the ruling below, "a stay will have accomplished nothing but delay"); *ASUSTek Comp. Inc. v. Ricoh Co.*, No. C0701942-MHP, 2007 WL 4190689, at *3 (N.D. Cal. Nov. 21, 2007) (noting

that "a stay pending appeal is of dubious character and may result in indefinite delay," and concluding that "it would be imprudent to condition [a] stay on anything as uncertain and indefinite as the pendency of Ricoh's appeal before the Federal Circuit"). Pure cites very few examples of courts granting stays merely because a relevant issue is before the Federal Circuit in a related case, and those cases presented different and unique circumstances.[2]

### B.    EMC Would Suffer Undue Prejudice from a Stay of This Action

EMC will be unduly prejudiced if delayed from proceeding with this case for the duration of post-trial rulings and an eventual appeal to the Federal Circuit. It is for this very reason that EMC has moved for preliminary injunctive relief. The record of this case and that of the 2013 Action between the parties is replete with clear and undisputed evidence that Pure directly competes with EMC on the market, and that EMC is harmed through competition against Pure. EMC has moved for preliminary relief to address this harm as quickly as possible, while Pure seeks to stall this case, as it continues to sell products that rely on EMC's patented technology and gain an unfair advantage in the marketplace. EMC has put forth far more than a "fair possibility" that it will be prejudiced by a stay, and Pure has offered only conclusory and legally

---

[2] The case Pure identifies as presenting "nearly identical circumstances" does not: in that case the court *sua sponte* stayed the case pending an appeal of the court's *Markman* order, before that order had ever been applied to an accused product and long before a party was an adjudged infringer. *See MEI, Inc. v. JCM Am. Corp.*, No. CIV. 09-351 RBK/JS, 2009 WL 3335866, at *4-5 (D. N.J. Oct. 15, 2009). The cases Pure identifies as presenting "similar circumstances" are also distinguishable. *See Helios Software, LLC v. Spectorsoft Corp.*, No. CV 15-20-LPS-CJB, 2015 WL 1387583, at *1-2 (D. Del. Mar. 25, 2015) (granting motion when plaintiffs did not oppose a stay); *St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility LLC*, No. CIV. 11-1305-LPS, 2012 WL 4321743, at *1 (D. Del. Sept. 20, 2012) (granting motion to stay pending resolution of motion for summary judgment in related case, noting a stay would allow the action to proceed in coordinated fashion with several other related cases already stayed). In fact, *Helios* supports EMC's position, not Pure's: the *Helios* court specifically declined to stay an action during the post-trial briefing in a prior case, noting that such a stay would be of "unknown duration" and "the Court is unwilling to sign on to a stay of such indeterminate length." *Helios*, 2015 WL 1387583, at *2.

insufficient allegations of harm it would experience should the stay be denied. Thus, this factor weighs strongly against granting Pure's requested stay.

### 1.      EMC and Pure Are Direct Competitors

The uniform law of this district disfavors a stay in a case like this one, where the parties are direct competitors.[3] *See ImageVision.Net, Inc.*, 2013 WL 663535, at *5-6 (denying motion to stay, finding "the competitive relationship between the parties weighs heavily against granting a stay" and observing that it is "well established" that courts are reluctant to stay proceedings where parties are direct competitors); *SenoRx*, 2013 WL 144255, at *8-9 (denying motion to stay and finding plaintiff would suffer undue prejudice from a stay when defendant itself had described the two companies as "hard fought competitors" in the field); *FMC Corp*, 2014 WL 3703629, at *5 (denying motion to stay when the parties were competitors); *Cooper*, 2010 WL 5149351, at *5 (same). When the parties are direct competitors, delay will result in "outsized consequences [to the party asserting infringement] . . . including the potential for loss of market share and an erosion of goodwill." *SenoRx*, 2013 WL 144255, at *7.

There is no dispute that EMC and Pure are direct competitors, as the undisputed record evidence of this case and the 2013 Action illustrates. Pure's damages expert and Pure's CEO admitted in the 2013 Action that Pure and EMC are directly competing. *See* 2013 Action Trial Tr. at 1856:23-1857:1 (Stamm testifying that the parties "are often competing for the same

---

[3] Courts do not require plaintiff and defendant to be the only players in the relevant market to find undue prejudice to competitors from a stay. *See, e.g.*, *FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 3703629, at *6 (D. Del. July 21, 2014) ("[E]ven in cases where there were some number of other competitors in the market, so long as plaintiff and defendant were joint market participants and engaged in some level of competition, our Court has tended to find that some amount of potential prejudice is at play."); *see also Cooper Notification, Inc. v. Twitter, Inc.*, No. CIV. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) (denying motion to stay when parties were direct competitors, though defendant asserted the parties only competed in a small percentage of their transactions).

customer, and if Pure wins, it's at the expense of EMC"); *id.* at 919:9-13 (Dietzen testifying that EMC is Pure's "primary competitor").   Pure's internal and external documents explain the all-flash array market is "increasingly a two-horse race" between EMC and Pure.   7/13 Pure PPT (2013 Action, PTX 278) at 35; 3/5/13 Pure Blog (2013 Action, PTX 238) at 2.   Third-party market reports confirm the direct competition between Pure and EMC. *See* Gartner Rpt. (2013 Action, PTX 222) at Fig. 1; IDC Rpt. (2013 Action, PTX 200) at 13; TechValidate Rpt. (2013 Action, PTX 276) at 2.   EMC's witnesses explained at trial that EMC's XtremIO product's closest competitor is "by far Pure Storage."   2013 Action Trial Tr. at 763:11-14 (Goldstein testimony); *see also id.* at 938:10-14 (Napper testifying that Pure's sales database shows Pure inputs "EMC" as its "primary competitor" on "hundreds of thousands of opportunities").   And, as Mr. Goldstein attested in support of EMC's pending motion for a preliminary injunction in this case, FlashArray//m, like the infringing FlashArray 400 before it, is now XtremIO's most frequent and most direct competitor in the market.   Goldstein Decl. (D.I. 17) at ¶¶ 3-5.   There can likewise be no dispute that Pure's use of EMC's patented technology in the marketplace causes EMC significant competitive harm, including lost sales, lost market share, and price erosion.   Prelim. Inj. Br. (D.I. 16) at 17-19.

## 2.     A Stay Would Prevent EMC from Receiving Immediate Injunctive Relief and the Expedited Resolution of This Case

Stays are particularly inappropriate in cases where the plaintiff has filed a meritorious motion for preliminary relief.   As an initial matter, the Federal Circuit has held unequivocally that when a preliminary injunction and a motion to stay are pending, the preliminary injunction motion must be decided first and on the merits. *See Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 843, 849 (Fed. Cir. 2008).   Moreover, in those cases where preliminary relief is warranted, stay is rarely appropriate. *See id.* at 849. *See, also e.g., FMC*

*Corp. v. Summit Agro USA*, LLC, 2014 WL 3703629, at *6 (D. Del. July 21, 2014) (denying motion to stay when plaintiff had filed a preliminary injunction motion, noting that motion showed that the parties were competitors).

EMC's motion for preliminary injunction is not only meritorious, but unusually so, in that EMC's likelihood of success on the merits is bolstered by the fact that Pure has already been found to infringe, and the patent has already been found valid.  Prelim. Inj. Br. (D.I. 16) at 9-17. Similarly, as EMC explained, EMC faces clear irreparable harm in the absence of an injunction, as Pure is EMC's closet competitor, with many of the harms caused by Pure's infringement being beyond the reach of money damages.  *Id*. at 17-19.  And finally, the balance of the hardships weighs heavily against Pure, who has repeatedly stated that it could easily remove the inline deduplication feature *entirely*, and thus does not need to rely on an infringing redesign.  *Id*. at 19-20.  If Pure's stay is granted, Pure will continue to sell its infringing FlashArray//m, taking sales and market share from EMC, eroding EMC's prices and goodwill, and may ultimately, once again, avoid paying damages that fully compensate EMC by arguing that they are too difficult to calculate with precision.

Moreover, it is critical that EMC's preliminary injunction motion be heard, because EMC cannot count on EMC's permanent injunction motion in the 2013 Action to provide complete relief.  With little explanation, Pure has refused to agree, during meet-and-confer sessions, that any permanent injunction issued in the 2013 Action would apply to Pure's current //m product. And Pure has stated that its forthcoming redesign is sufficiently different from the accused products in the 2013 Action to fall outside the scope of any injunction order in that case. Although EMC believes that Pure is wrong on these points, there is authority suggesting that purported "differences" in a redesign that are insufficient to avoid *infringement* may still be

significant enough to avoid *contempt*, thus allowing an infringing redesign to escape an injunction order, and necessitating a new case. *See Tivo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881-83 (Fed. Cir. 2011). Because EMC cannot wait for years for this result, and because there are sufficient facts available now to show that Pure's redesign infringes, preliminary relief is both essential and appropriate.

Finally, even if the Court were to deny preliminary relief, a stay would still be inappropriate. In the event the Court denies EMC's motion, EMC intends to seek targeted discovery, and request leave to file a prompt motion for summary judgment directed at Pure's FlashArray//m. Although EMC would be irreparably harmed without an injunction, an expedited ruling on the issues might at least help deter EMC's customers from buying infringing products from Pure, and could assist EMC in its efforts to obtain an award of enhanced damages and attorneys' fees. Speed, rather than a stay, is appropriate in this case.

Yet Pure seeks a stay for an undefined and likely lengthy period of time. The length and indefiniteness of Pure's proposed stay compounds the already significant undue prejudice to EMC. The length of the requested stay is one factor the Court may consider in assessing the degree of prejudice that may result from the delay. *See Fujifilm*, 2009 WL 192457, at *2 (listing "length of the requested stay" as a factor to consider in determining whether to grant a motion to stay, and declining to stay a second case between the parties for the duration of post-trial motions and eventual appeal of the first case when "the time frame for adjudication of any such appeal is . . . uncertain"); *see also Cooper*, 2010 WL 5149351, at *4 (noting the evidentiary disadvantages to plaintiff likely to result from a lengthy stay). In this case, as in *Fujifilm*, the Court should reject the defendant's motion to stay the case against it for the duration of post-trial motions and appeal. 2009 WL 192457, at *2.

### 3. Pure Has Not Come Close to Showing a Clear Case of Hardship or Inequity Should the Court Deny Its Motion to Stay

The assessment of undue prejudice "does not occur in a vacuum." *ImageVision.Net*, 2012 WL 5599338, at *2. Rather, in order to determine whether the prejudice is "undue," the prejudice to the non-moving party likely to be caused by a stay should be compared to the prejudice that would result to the moving party should the stay be denied. When there is a "fair possibility" that a stay may work prejudice to the other party, the moving party generally must come forward with a "clear case of hardship or inequity in being required to go forward" with the case. *Fujifilm*, 2009 WL 192457, at *2; *see also ImageVision.Net*, 2012 WL 5599338, at *3 (explaining that the "fair possibility" inquiry frames the analysis of undue prejudice).

EMC has advanced far more than a "fair possibility" that it will be prejudiced. Yet Pure articulates the possible prejudice it could face if required to go forward with this litigation in three conclusory sentences, noting an increase in its litigation costs and the risk of inconsistent decisions. Pure Br. (D.I. 9) at 12. But, as Pure acknowledges, increased litigation costs do not constitute hardship or inequity. *See SenoRx*, 2013 WL 144255, at *9 n. 12 (noting added litigation costs do not amount to clear hardship and inequity); *Cooper*, 2010 WL 5149351, at *2 n. 1 (same). Nor can Pure's single sentence suggesting the risk of conflicting judgments constitute a "clear case of hardship or inequity." Thus, the balancing of the equities clearly favors EMC, and this matter should not be stayed.

### C. A Stay Is Unlikely to Simplify the Issues Presented in This Case

A stay will not simplify the case because Pure is unlikely to prevail on its post-trial motions and appeal. Pure was required to prove by clear and convincing evidence both that its references were in fact prior art, and also that each and every element of the patent claims were disclosed in a single one of the references. The jury found against Pure on these issues, which

the Federal Circuit has noted present classic questions of fact.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1322 (Fed. Cir. 2008).  In order to prevail now, Pure would have to show that no reasonable jury, based on the evidence, could have found that Pure did not meet this high burden of proof.  The trial record shows that there was substantial evidence that the three asserted references did not disclose certain elements, and the jury was entitled to side with EMC in that factual dispute.  2013 Action Trial Tr. at 1968:16-1976:4; *id.* at 1977:11-1985:8.

Similarly, Pure's argument regarding the invention date of the '015 patent only has implications for the prior art status of the Sun reference, and is equally unlikely to succeed, as the inquiry for corroboration of inventor testimony regarding conception is the fact intensive "rule of reason."  *See Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014) ("rule of reason" analysis requires that "all pertinent evidence is examined in order to determine whether the inventor's story is credible") (citation and internal quotation marks omitted).  And again, it is Pure who bears the burden of proof on prior art status, and by clear and convincing evidence. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).  The jury's finding that the Sun reference was not prior art is more than amply supported by the evidence EMC put forth at trial.  2013 Action Trial Tr. at 1954:7-1968:15.

Finally, Pure's chances of obtaining a new, more favorable claim construction on appeal of this Court's *Markman* rulings are low.  Should Pure appeal the claim construction issues that were the subject of dispute twice before this Court, for example, and again attempt to graft portions of the specifications into the claims, Pure's appeal is unlikely to succeed. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims.").  Accordingly, because any simplification resulting from post-

15

trial motions and appeal from the 2013 Action is entirely speculative, and in fact very unlikely, this factor also weighs in favor of EMC and against Pure's motion to stay.

### D.      The Stage of Litigation Weighs Against a Stay

In light of the outcome of the 2013 Action, this case should not be considered a brand new case, but one where the parties have already invested significant resources, and where core issues have already been decided.  In these circumstances, courts routinely deny motions to stay. *See SoftView LLC v. Apple Inc.*, No. CIV. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (noting that, although discovery had just begun, the parties and the court had spent significant resources on the litigation and finding the status of the litigation did not favor a stay); *see also Cooper*, 2010 WL 5149351, at *3 (D. Del. July 2, 2010) (finding though the litigation remained in early stages, the court had already spent significant resources on the case).  In this case, the Court and the parties have already expended tremendous resources litigating the 2013 Action.  A significant portion of that work product will carry over into this case.  For example, there is no need for another *Markman* hearing, as the Court has already construed the claims. Thus, the interest of judicial economy will not be advanced by a stay.

Moreover, the potentially significant length of Pure's proposed stay, in contrast to the limited time EMC would need to obtain adequate relief in this case, further weighs against a stay. *See SoftView*, 2012 WL 3061027, at *4 (balancing the early stage of litigation against the early stage of the PTO reexamination proceedings); *see also Cooper*, 2010 WL 5149351, at *4 (same). In this case, the appeal during which Pure would have this matter stayed has not yet begun.  A notice of appeal has not yet been filed.  As such, the stage of litigation weighs in favor of denying the motion, not granting it.

### E.     The Timing of This Suit Is Proper

Pure's suggestion that EMC "delayed" in filing this suit and accusing FlashArray//m is

unfounded.  The timeline of events shows that EMC moved with deliberate speed in filing suit

and seeking preliminary injunctive relief:

- **March 13, 2015**: Close of discovery in 2013 Action.  Scheduling Order (2013 Action, D.I. 16) at 3.

- **June 1, 2015:** Pure announces FlashArray//m release.  FlashArray//m Press Release (D.I. 18, Ex. 9) at 1.

- **July 2, 2015:** Pure refuses EMC's requests for FlashArray//m discovery.  7/2/15 Letter to M. Poppe (D.I. 10, Ex. G).

- **March 7, 2016:** Trial begins in 2013 Action.

- **March 15, 2016:** Verdict entered in 2013 Action.  Verdict (2013 Action, D.I. 453).

- **March 15, 2016:** Pure publicly states that it will continue offering inline deduplication in the form of a redesign.  Pure Litigation Update 1 (D.I. 18, Ex. 6).

- **March 21, 2016:** EMC files suit accusing FlashArray//m product.  Complaint (D.I. 1).

- **April 14, 2016:** EMC files its Motion for a Permanent Injunction in the 2013 Action. Perm. Inj. Mot. (2013 Action, D.I. 491).

- **April 14, 2016:** Pure publicly states that EMC's Permanent Injunction applies only to Pure's discontinued FlashArray 300 and 400 products.  Pure Litigation Update 2 (D.I. 18, Ex. 8) at 2.

- **April 22, 2016:** EMC files its Motion for a Preliminary Injunction.  Prelim. Inj. Mot. (D.I. 15).

As illustrated above, EMC did not accuse FlashArray//m in the 2013 Action, because

FlashArray//m was released ***after the close of discovery*** in the 2013 litigation.  Pure refused to

provide EMC with discovery on that product, and EMC believed resolution of the 2013 Action

would resolve the parties' future disputes because EMC believed (and continues to believe) that

the //m product works in the same way as the previously-accused products.  It would have been a

supreme waste of judicial resources, not to mention those of the parties, to commence new litigation about an identical product only months before the critical issues relating to infringement and validity were to be tried. Had EMC done so, Pure would undoubtedly have moved to stay that litigation as well.

Further, aside from the //m product, EMC had no reason to seek to somehow accuse Pure's forthcoming redesign in the prior litigation, given that the release of products incorporating that design-around was far from imminent. Had EMC not prevailed at trial on the '015 patent, there is no guarantee that Pure would ever have released its design-around. It was only after trial that Pure's release of its new design became imminent.

Finally, EMC believed that Pure would act in good faith, and once adjudged to infringe, would cease to include that feature in its future products as well as those accused in the 2013 Action. As soon as it became clear to EMC that Pure would continue to infringe, EMC acted, filed its new case, and sought preliminary relief from this Court. There was no delay.

## VI. CONCLUSION

For the above reasons, EMC respectfully requests that the Court deny Pure's motion for a stay pending resolution of post-trial and appellate proceedings in the 2013 Action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

*Attorneys for Plaintiffs EMC Corporation,*
*EMC International Company and EMC*
*Information Systems International*

Josh A. Krevitt
Paul E. Torchia
Steven M. Kalogeras
Katherine Q. Dominguez
Laura F. Corbin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2490

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Jordan H. Bekier
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA 01748

April 28, 2016
10002127

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 28, 2016, upon the following in the manner indicated:

John W. Shaw, Esquire                                      *VIA ELECTRONIC MAIL*
David M. Fry, Esquire
SHAW KELLER
300 Delaware Avenue, Suite 1120
Wilmington, DE  19801
*Attorneys for Defendant*

Robert A. Van Nest, Esquire                               *VIA ELECTRONIC MAIL*
Matthew Werdegar, Esquire
Ashok Ramani, Esquire
R. Adam Lauridsen, Esquire
Corey A. Johanningmeier, Esquire
David W. Rizk, Esquire
Stuart L. Gasner, Esquire
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA  94111-1809
*Attorneys for Defendant*

                                        */s/ Jeremy A. Tigan*
                                        Jeremy A. Tigan (#5239)